1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

JUDY K. LEE,

           Plaintiff,

11

    v.

12

MARY ELLEN WINBORN,
CLALLAM COUNTY,

13

           Defendant.

14

CASE NO. 3:17-CV-6065-DWC

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

15
16

     Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR

17

13, the parties have consented to have this matter heard by the undersigned Magistrate Judge.

18

Dkt. 11. Currently before the Court is Defendants Mary Ellen Winborn and Clallam County's

19

Motion for Summary Judgment. Dkt. 27. The Court concludes Plaintiff Judy K. Lee failed to

20

rebut Defendants' evidence showing they are entitled to summary judgment. Accordingly, the

21

Court grants the Motion (Dkt. 27) and this case is closed.

22

**I.      Background**

23

     Lee filed this lawsuit challenging the actions of Winborn, the Community Development

24

Director for Clallam County, and Clallam County ("the County") during Lee's development of

her new home, containing a bed and breakfast. *See* Dkt. 1. Lee seeks damages, a writ of

mandamus, declaratory relief, and injunctive relief under multiple state and federal causes of

action. *See id*.

Defendants filed the Motion with supporting evidence on October 21, 2019. Dkt. 27, 28.

Lee filed a Response with supporting evidence on November 12, 2019. Dkt. 31, 32. Defendants

filed a Reply on November 19, 2019. Dkt. 36.[1] The Court held oral argument on January 21,

2020. *See* Dkt. 46.[2]

## II.  Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (nonmoving party must present specific, significant probative evidence, not simply "some

metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

material fact exists if there is sufficient evidence supporting the claimed factual dispute,

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

---

[1] The Court reset oral argument to January 21, 2020 after holding a status conference on December 11, 2019 regarding pretrial dates and the trial date. *See* Dkt. 39, 40.

[2] During the hearing, the Court heard argument from Attorney Mark Johnsen, on behalf of Defendants, and Attorney Bradley Andersen, on behalf of Plaintiff. Also present on behalf of Plaintiff was Attorney John "Jed" Powell.

*Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### III.    Withdrawn Claims

During oral argument, Lee withdrew her (1) defamation, (2) defamation per se, and (3) outrage and intentional infliction of emotional distress claims. Therefore, the Court dismisses these three claims.

### IV.    Evidence

The relevant evidence shows Lee purchased a five-acre parcel in unincorporated Clallam County. Dkt. 32, Lee Dec., ¶ 2. Lee planned to build a personal home on the property and operate a bed and breakfast in the home. *Id*. Lee did not find any operating bed and breakfasts in Clallam County that were similar to the bed and breakfast she planned to build and operate. Dkt. 28, Johnsen Dec., p. 5. If there were similar bed and breakfasts in the area, Lee would have been deterred from building. Dkt. 28, Johnsen Dec., p. 6.

Lee confirmed, prior to closing on the property, that zoning allowed her to build a home together with a bed and breakfast as a permitted use. Dkt. 32, Lee Dec., ¶ 3. Lee "knew there were no size restrictions on the residence." *Id*. Lee had a pre-application meeting with Clallam County's Department of Community Development ("DCD") in January of 2016. *Id*. at ¶ 4. During this meeting, Winborn "pulled [Lee] aside to warn that, despite it being allowed under the zoning and building codes, the project was too large and would never be permitted." *Id*. "Winborn threatened that she would do all she could to delay or prevent the building permit, unless [Lee] voluntarily agreed to reduce its size." *Id*.

On January 13, 2016, the County provided a letter to Lee stating additional information was needed for Lee's Project Review Request as the project did not appear to meet the scope of a bed and breakfast and would require approval of a Zoning Conditional Use Permit. Dkt. 28-1.

Lee agrees the January 13, 2016 letter does not provide much assurance that her project would be permitted. Dkt. 28, Johnsen Dec., p. 21.

Lee closed her purchase of the property on May 17, 2016 and, on May 31, 2016, submitted plans for her residential building permit. Dkt. 32, Lee Dec., ¶ 5. Lee states, in submitting her plans, she relied on a January 26, 2016 written review list from the County that identified the items needed for a "Residential Building Permit." *Id*. Lee did not include this letter in the evidence.

After Lee's residential building permit plans were submitted, the County notified Lee the application would be processed as a commercial project. Dkt. 32, Lee Dec., ¶ 5. On June 29, 2016, the County provided written notice to Lee that her planned 32,000 square foot structure would be classified as a boarding house, not a bed and breakfast. Dkt. 28, Johnsen Dec., p. 4; *see also* Dkt. 28-2. The County notified Lee of the additional information Lee needed to submit to the County for the County to process Lee's State Environmental Policy Act ("SEPA") checklist. Dkt. 28-2.

On July 8, 2016, counsel for Lee submitted written objections in response to the County's decision that Lee's project did not appear to comply with the zoning codes. Dkt. 32, Lee Dec., ¶ 5; Dkt. 32-1. Lee states that "[u]nbeknownst to [her] Winborn placed a proposal to have the County Commissioners adopt an emergency moratorium to stop or reduce the size of [Lee's] house. The proposed ordinance (later entitled Ordinance 909) was solely targeted at [Lee] and [her] building permit application. Knowing [Lee] would have wanted to be heard by the Commissioners before they voted, Winborn intentionally chose to not give [Lee] notice of her request or of the public meeting." Dkt. 32, Lee Dec., ¶ 6.

On July 18, 2016, at a Clallam County Board of Commissioners' work session, the commissioners, Winborn, and some citizens discussed an emergency ordinance that would place a two-month moratorium on building rural residential structures over 10,000 square feet in the county. Dkt. 32-3; *see* Dkt. 32, Lee Dec., ¶ 9. A transcript from this meeting indicates that an unidentified speaker stated if the emergency ordinance was not issued Lee would pay the application fee and the County would be unable to stop Lee's development. Dkt. 32-3, p. 14; *see also* Dkt. 32, Lee Dec., ¶ 8 (incorrectly attributing the statement to Winborn). Lee contends Winborn knew Lee was represented by counsel and Lee expected "staff" would notify her or her attorneys regarding hearings or meetings concerning Lee's building permit. Dkt. 32, Lee Dec., ¶ 10.

During the July 19, 2016 regular Board of Commissioners' meeting, Winborn requested the board of commissioners adopt an emergency ordinance imposing the moratorium. Dkt. 32, Lee Dec., ¶ 7. The transcript from this July 19, 2016 meeting shows the board of commissioners heard comments from Craig Miller, Lee's attorney, and Kenneth Reandeau, a citizen who felt the proposed structure on a two-acre lot was outside the norm and requested the public and planning commission be involved. Dkt. 32-2; *see* Dkt. 32, Lee Dec., ¶ 10. The board of commissioners also heard from Winborn. Dkt. 32-2, pp. 10-13. An unidentified speaker stated that, as much as they would like to support the emergency ordinance philosophically, legally they could not support the ordinance. Dkt. 32-2, p. 14. Winborn responded, "It's unfortunate that legal and right and two different things." Dkt. 32-2, p. 14. To which the unidentified speaker stated, "Yes . . . that is often the case." Dkt. 32-2, p. 14. The unidentified speaker also stated that they heard from several people in their neighborhood who were concerned about the size of Lee's project. Dkt.

32-2, p. 15. The transcript from this meeting indicates the commissioners did not pass the emergency ordinance. *See* Dkt. 32-2.

Sometime after the July 19, 2016 meeting, Lee presented the County with a check for the building fees to vest her application. *Id*. at ¶ 11. Lee "made the check out to the 'Planning Department.'" *Id*. County staff rejected Lee's check and directed her to replace the check with one made out to the "Building Department." *Id*. Lee "sent a new check made out to the 'Building Department,' knowing this was the last step to having [her] application be deemed vested." *Id*.

On July 25, 2016, Lee's counsel wrote a letter to Annette Warren, the Building Official/Fire Marshal for the DCD, requesting the County review Lee's building application. *Id*. at ¶ 12; Dkt. 32-4. During the July 26, 2016 regular Board of Commissioners' meeting, Winborn requested the board of commissioners adopt an emergency ordinance that would limit the buildings in rural residential areas to 10,000 square feet for sixty days to allow the county time to study the issues surrounding larger building projects. Dkt. 32-5, p. 19. Winborn had posted comments online prior to the meeting regarding Lee's building application, requesting citizens attend the hearing and oppose Lee's application. Dkt. 32, Lee Dec., ¶ 14; Dkt. 32-7. The emergency ordinance adopting the moratorium was passed at the July 26, 2016 meeting. *See* Dkt. 32-5; Dkt. 32-7.

Winborn notified Lee of the moratorium and that her application had not vested. Dkt. 32, Lee Dec., ¶ 16. Lee's attorney sent a letter to Winborn on August 5, 2016, requesting reconsideration of the vesting date of her application. *Id*.; Dkt. 32-8. On August 12, 2016, Lee's attorney also sent a Tort Claim Notice to the County alleging several constitutional and state law tort claims against the County and Winborn regarding the moratorium and Defendants' refusal to issue a building permit for Lee's home. Dkt. 32, Lee Dec., ¶ 17; Dkt. 32-9. A few weeks later,

the county commissioners rescinded the moratorium and Winborn determined Lee's application vested prior to the July 26, 2016 adoption of Ordinance 909 (the emergency ordinance). Dkt. 32, Lee Dec. ¶ 18; Dkt. 28, Johnsen Dec., p. 6.

On August 23, 2016, Winborn informed Lee that the DCD would process Lee's permit application as vested on July 26, 2016. Dkt. 32, Lee Dec., ¶ 19; Dkt. 28-3. Winborn stated that "it would be in everyone's best interest for [the County] to send [Lee's] drawings to the International Code Council (ICC) to have a third party review performed." Dkt. 28-3.[3] Winborn confirmed Lee's plans would be reviewed under the International Residential Code ("IRC"). *Id.*; Dkt. 32, Lee Dec., ¶ 19. Lee asserts that, on September 23, 2016, Winborn unilaterally decided Lee's application had to be reviewed under the International Building Code ("IBC"), not the IRC, because the property was in the name of Lee's limited liability company ("LLC"). Dkt. 32, Lee Dec., ¶ 20.

Defendant's evidence shows, however, that on September 23, 2016, James Connell, of the ICC, wrote to Warren, of the DCD, stating the ICC did a preliminary review of the drawings of Lee's project and concluded the IBC, not the IRC, applied. Dkt. 28-4. Connell stated the rationale for the decision was because: (1) the owner was a corporation, not an individual occupant; (2) bedrooms designated as "family" bedrooms could be rented and could not be "family" bedrooms because the owner was a corporation; (3) the plans did not show as owner occupied and contained more than five guestrooms; (4) the plans more nearly depicted a boarding house transient with more than ten occupants, which is a Group R-1 occupancy in the

---

[3] The ICC is a nonprofit association that provides a wide range of building safety solutions including product evaluation, accreditation, certification, codification and training. *See* www.iccsafe.org/about/who-we-are/ (accessed March 13, 2020). Lee's drawings were reviewed by an ICC member from the Eastern Regional Office in Birmingham, Alabama. *See* Dkt. 28-4.

IBC. Dkt. 28-4. Connell stated the plans would require major changes to meet the IBC and provided a list of items to change. Dkt. 28-4. He stated the ICC "office [would] not review the plans submitted because the building should be designed based on the [IBC] and not the [IRC]." Dkt. 28-4. The evidence shows Lee received Connell's letter in September of 2016. Dkt. 28, Johnsen Dec., p. 8; Dkt. 32-10.

A September 30, 2016 letter from Lee's attorneys to Winborn indicates the DCD adopted Connell's determination that Lee's project could not be regulated by the IRC. Dkt. 32-10. In the September 30, 2016 letter, Lee's attorneys objected to the determination that Lee's project was governed by the IBC. *See* Dkt. 32, Lee Dec., ¶ 21; Dkt.32-10. Lee asserts, without providing evidentiary support, that Winborn refused to change the DCD's position that Lee's application had to be processed as a commercial building because it was owned by Lee's LLC. Dkt. 32, Lee Dec., ¶ 21. "To avoid the problem and further delays, [Lee] had [her] LLC convey the property into [Lee's] name." *Id.*; *see* Dkt. 32-12.

Lee asserts the County provided reasons for determining Lee's project did not comply with the IRC, but did so in a piecemeal fashion. *See* Dkt. 31; Dkt. 32, Lee Dec., ¶¶ 22-24. Lee contends that, despite repeated requests, the County would not issue a correction sheet explaining what changes the County believed needed to be made to Lee's building application. Dkt. 32, Lee Dec., ¶ 24. "The only way to obtain a list from the County was to file an appeal of the County's decisions and wait for the DCD Staff to issue its Hearing Briefs containing a list of perceived issues with the building application." *Id.*

Shortly before the DCD hearing,[4] the DCD staff issued a report that asserted the County believed Lee's project was a commercial building instead of a residential structure because the first floor was 145 inches, rather than 144 inches, above the basement. *Id*. at ¶ 25. This resulted in a four-story structure governed by the IBC. *Id*. Lee offered to revise the plans to reduce the height by one inch. *Id*. Winborn refused to accept Lee's modification and insisted on having the Clallam County Board of Appeals consider the existing plans. *Id*. at ¶ 26.

Lee appealed the DCD's decision to the Board of Appeals. *See* Dkt. 28-11. On December 15, 2016, the Board of Appeals affirmed the DCD's decision finding Lee's project was an R-1 occupancy, not R-2 as required by the zoning code for the location of the property. *See id*. The Board of Appeals found "Warren, as the appointed building official for the County, has latitude to interpret the plans presented to her and at the same time does not have any obligation to design or re-design the [Lee's] plans." Dkt. 28-11, p. 10; *see also* Dkt. 28, Johnsen Dec., p. 10. The Board of Appeals found Warren's decision to classify Lee's plans as a boarding house subject to the IBC was reasonable based on her experience and expertise. Dkt. 28-11, p. 11; *see also* Dkt. 28, Johnsen Dec., p. 11.

Plaintiff appealed the Board of Appeals' decision to the Kitsap County Superior Court ("superior court") under Washington's Land Use Petition Act ("LUPA"). Dkt. 32, Lee Dec., ¶ 27; Dkt. 28-12. While Lee's appeal was pending with the state superior court, Lee re-designed her building plans to ensure the home met the height restrictions. Dkt. 32, Lee Dec., ¶ 26. Lee submitted the updated plans to the County in January of 2017. *Id*. Because Lee had a pending appeal, the DCD refused to evaluate the updated plans for over eight months. *Id*.

---

[4] There is no evidence showing the date Defendants issued the report or the date the DCD made its decision regarding Lee's application.

The County also refused to allow any updated plans to be submitted as part of the County's administrative record to the superior court. Dkt. 32, Lee Dec., ¶ 28. On July 28, 2017, the superior court determined that the Board of Appeals' conclusion that Lee's plans exceeded the height restrictions under the IRC was based upon substantial and competent evidence. Dkt. 32, Lee Dec., ¶ 28; Dkt. 28-12; *see also* Dkt. 28, Johnsen Dec., p. 12. The superior court found review of any other claimed error was moot. Dkt. 28-12; Dkt. 32, Lee Dec., ¶ 29; *see also* Dkt. 28, Johnsen Dec., p. 12. Lee asserts the superior court's decision made it clear that Lee should be permitted to revise her plans to have the plans reviewed under the IRC. Dkt. 32, Lee Dec., ¶ 29. The "DCD Staff still refused to provide comments on what corrections were needed to have [Lee's] plans reviewed as a residential structure instead of a commercial building." *Id.*

On August 10, 2017, approximately two weeks after the superior court issued its decision affirming the Board of Appeals' decision, Lee requested Winborn's staff evaluate the plans that Lee submitted in January of 2017. Dkt. 32, Lee Dec., ¶ 30. On September 15, 2017, Winborn found the plan modifications addressed the one-inch issue, but, without explanation, continued to insist the IBC, not IRC, applied. *Id.* On October 12, 2017, Winborn announced she decided to treat Lee's plan as a hotel, which was prohibited under the zoning code. *Id.* at ¶ 31. Winborn's decision that Lee's plan constituted a hotel meant Lee had to file two appeals – an occupancy determination to the Board of Appeals and a use determination to the County's Hearing Examiner. *Id.* at ¶ 32.

On November 17, 2017, the County's Chief Civil Deputy Prosecuting Attorney stated that, with regard to the plans she submitted in January 2017, Lee "could either submit revised plans or appeal the County's zoning and building code determinations." *Id.* at ¶ 34. The County

provided explanations regarding its determinations, so Lee felt she could finally address the County's concerns. *Id*. Lee chose to submit revised plans. *Id*.

On February 1, 2018, approximately one month after Lee initiated this lawsuit, Lee's attorney wrote the County explaining Lee's frustrations with the County's handling of Lee's plans and the County's failure to timely explain the reasoning behind recent determinations. Dkt. 32, Lee Dec., ¶ 34. The County insisted Lee submit a new application, wherein Lee would lose her vesting. *Id*. at ¶ 35. Because "the County refused to review amended plans during an appeal, and the County refused to stay the appeal to facilitate review of the revised plans, [Lee] decided to forego the expensive appeal process[.]" *Id*.

On May 29, 2018, Lee submitted revised plans to the County that addressed the County's concerns. *Id*. at ¶ 37. Lee confirmed that she intended to have her home constructed in accordance with the IRC and requested the County review her plans without further delay. *Id*. The County agreed to remove Winborn and her staff from having any role in the review or processing of Lee's building permit. *Id*. at ¶ 38. The County agreed to appoint an outside professional to serve as the County's *pro hac* planning and building director for Lee's application. *Id*.

In late 2018, the parties "finally agreed to use the Clair Company" as the third-party reviewer. *Id*. The Clair Company is exclusively responsible for the review, issuance, and administration of Lee's application. *Id*. Lee submitted initial plans to the Clair Company on November 22, 2018. Dkt. 28, Johnsen Dec., p. 15; Dkt. 28-7. In April 2019, the Clair Company determined Lee's plans were incomplete and not suitable for review. Dkt. 28, Johnsen Dec., p. 15; Dkt. 28-7. The Clair Company provided Lee with a list of items Lee needed to provide to the Clair Company before the Clair Company could begin reviewing her project. Dkt. 28-7. The

Clair Company stated that the "list [was] not intended to be complete as only a cursory review of the submitted plans was performed for completeness." *Id*. Lee was not surprised to receive the letter. Dkt. 28, Johnsen Dec., p. 15. As of September 25, 2019, Lee had not provided any of the requested items to the Clair Company. *Id*. at pp. 16-17.

## V.      Discussion

### A.      Collateral Estoppel and Ripeness

Defendants first assert Lee's claims arising from the County's decision on Lee's initial application are barred by collateral estoppel. Dkt. 27. Defendants also assert claims related to Lee's January 2017 amended application are not ripe. *Id*.[5]

In the Complaint, Lee seeks a writ of mandamus ordering the County to process Lee's building permit application, a declaration that Lee's planned home is governed by the IRC and allowed in the R-2 zone, and preliminary and permanent injunctions compelling the County to either process and issue Lee's building permit by a date certain or to retain an independent, ICC-certified third-party plans examiner to do so. Dkt. 1. Lee also requests damages for Defendants' conduct surrounding the applications for building permits. *See id*.

### 1.   *Initial Application*

Defendants contend the claims arising from the initial application are barred by collateral estoppel. Dkt. 27. Collateral estoppel "prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case." *Barr v. Day*, 124 Wash.2d 318, 324–25, 879 P.2d 912 (1994).

> Four conditions must be met before the doctrine will be applied: (1) the issues in the two actions must be identical; (2) there must have been a final judgment in the

---

[5] The evidence shows Lee submitted an application in July 2016 ("initial application"). She then filed a revised application in January 2017 ("amended application"). Finally, in May 2018, Lee submitted a revised amended application ("second amended application"). *See* Dkt. 32, Lee Dec.

first action; (3) the party against whom the estoppel is being pleaded must have been a party or in privity with a party to the first action; and (4) application of the doctrine cannot work an injustice on the party against whom it is pleaded.

*Lutheran Day Care v. Snohomish Cty.*, 119 Wash.2d 91, 115, 829 P.2d 746 (1992)

Lee's initial application for a permit was denied by the County and the denial was upheld by the Clallam County Board of Appeals. Lee appealed to the Kitsap County Superior Court. The superior court determined there was no evidence the Board of Appeals erred in determining the height of Lee's planned structure required review under the IBC. Dkt. 28-12. The superior court stated, "there is no showing that proper procedure was not followed, that the law was interpreted or applied erroneously, or that the land use decision with respect to this issue was not supported by competent and substantial evidence." Dkt. 28-12, pp. 11-12. Thus, the superior court determined Lee's initial application was properly denied. Lee cannot relitigate this decision. Therefore, the Court finds any request that this Court order the County to issue the permits for or to determine the IRC applies to Lee's initial application is barred by collateral estoppel.

Lee, however, asserts she is seeking damages for Defendants' conduct when they delayed and interfered with her ability to obtain the building permits. LUPA does not apply to "[c]laims provided by any law for monetary damages or compensation." RCW 36.70C.030(1)(c). However, a damage claim may still be controlled by LUPA if it is dependent on "an interpretive decision regarding the application of a zoning ordinance." *Asche v. Bloomquist,* 132 Wash.App. 784, 801 (2006), *review denied,* 159 Wash.2d 1005 (2007). Here, Defendants have not shown Lee's claims for damages are precluded by the superior court's decision. Therefore, the Court finds Lee's claims for monetary damages related to the initial application are not barred by collateral estoppel.

1        2.  *Amended Application*

2        Defendants also assert claims related to Lee's amended application are not ripe or are

3   barred by LUPA. Dkt. 27. LUPA is normally the exclusive remedy for land use decisions. RCW

4   36.70C.030(1). "In order to have standing to bring a land use petition under LUPA, the petitioner

5   must have exhausted his or her administrative remedies …. [and] filed for judicial review ...

6   within 21 days of the issuance of the land use decision." *James v. County of Kitsap*, 154 Wash.2d

7   574, 583 (2005) (citing RCW 36.70C.040(3), .060(2)(d)).

8        Here, Lee states the County has not issued a final decision on her application. *See* Dkt.

9   31, p. 16.[6] The evidence shows Plaintiff's initial application was denied by the County and that

10  decision was upheld by the superior court. Plaintiff submitted her amended application and, after

11  the County indicated it would treat the amended application as a commercial building under the

12  IBC, Lee declined to appeal the County's decision on her amended application and instead

13  decided to revise her plans. *See* Dkt. 32, Lee Dec., ¶¶ 31, 34-35. Lee then submitted revised

14  plans as the second amended application, which is currently being reviewed by the Clair

15  Company. *See* Dkt. 28, Johnsen Dec., pp. 15-17. Therefore, the evidence shows Lee's amended

16  application never reached a final decision. As such, any claims regarding the County's decisions

17  on the amended application are not ripe for this Court's review.

18       Lee again states she is seeking damages for the delay and costs for compelling

19  Defendants to give her application a fair review. Dkt. 31, pp. 16-17. While any challenge to an

20  actual decision on the amended application is not ripe, the Court finds Lee's claims for damages

21  are ripe for this Court's consideration. *See Woods View II, LLC. v. Kitsap County*, 188

22  _____

23       [6] The Court interprets Lee's argument to be that, because her initial application has merely been revised
    through the amended application and second amended application and because the Clair Company has not issued a
24  decision, there has been no final decision on her application(s).

1  Wash.App.1, 25 (2015) (finding LUPA was not a bar to plaintiff's claims for damages for the

2  delay in the county rendering land use decision).

3      3.  *Conclusion*

4      In sum, the Court finds Lee is collaterally estopped from re-litigating the superior court's

5  decision upholding the denial of her initial application. Further, there is no final decision on

6  Lee's amended application and thus any decision on the amended application is not ripe for this

7  Court's review. Defendants, however, have failed to show Lee's claims for monetary damages

8  cannot be heard by this Court.

9      B.  Constitutional Claims

10     Defendants contend there is no evidence to support Lee's claims of constitutional

11  violations under the First and Fourteenth Amendments. Dkt. 27. Lee alleges Defendants' conduct

12  violated her (1) equal protection rights under the Fourteenth Amendment; (2) First Amendment

13  right to be free from retaliation; and (3) substantive and procedural due process rights under the

14  Fourteenth Amendment. Dkt. 1.

15     1.  *Equal Protection*

16     Lee alleges Defendants' violated the Fourteenth Amendment when they treated Lee's

17  building permit application differently than other similarly situated applicants. Dkt. 1. The

18  Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all persons

19  similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473

20  U.S. 432, 439 (1985). A successful equal protection claim may be brought by a "class of one,"

21  when the plaintiff alleges she has been intentionally treated differently from others similarly

22  situated and there is no rational basis for the difference in treatment. *Village of Willowbrook v.*

23  *Olech*, 528 U.S. 562, 564 (2000). To succeed on a "class of one" claim, a plaintiff must

24

demonstrate that the government: "(1) intentionally (2) treated [the plaintiff] differently than other similarly situated property owners, (3) without a rational basis. *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011). "[A] class of one plaintiff must show other persons were treated differently in nearly identical circumstances." *Burch v. Smathers*, 990 F. Supp. 2d 1063, 1075 (D. Idaho 2014)

Defendants assert Lee can identify no similarly situated permit applications or projects that were treated differently than Lee's permit application or project and therefore her "class of one" claim cannot succeed. Dkt. 27, p. 9. The evidence shows Lee is seeking to build a 32,000 square foot bed and breakfast. *See* Dkt. 32-3, p. 4. Lee testified she did not find any operating bed and breakfasts in Clallam County that were similar to the bed and breakfast she planned to build. Dkt. 28, Johnsen Dec., p. 5. Moreover, if there were similar bed and breakfasts in the area, Lee would have been deterred from building. *Id*. at p. 6. There is also evidence Lee's proposed residence was three times larger than any current residence in the county. *See* Dkt. 32-2, pp. 8, 16; Dkt. 32-3, p. 4. Further, the size and scope of Lee's project had never been contemplated by the County and the County was experiencing something that it had not anticipated or ever dealt with. Dkt. 32-5, pp. 60, 63. The County issued a moratorium prohibiting *all* building projects in rural, residential areas larger than 10,000 square feet for two months. Dkt. 32-7.

Lee does not cite to any evidence to show there are similarly situated permit applications or projects that been treated differently. *See* Dkt. 31. Rather, Lee cites to case law stating a "class of one" can be maintained in a land use context. *Id*. at pp. 19-20. The Court does not disagree, but finds, in this case, the undisputed evidence fails to show a similar situated permit application or project was treated differently. Lee sought to build a home and bed and breakfast unlike any structure in the County. And, in fact, there were no similar structures like it in the County.

Moreover, the County had never dealt with a similar application for a building permit and passed an emergency ordinance stopping all rural, residential buildings larger than 10,000 square feet, not solely Lee's project. As such, Lee has not sufficiently rebutted Defendants' showing that Lee was not treated differently from someone in nearly identical circumstances. *Ruston v. Town Bd. for the Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010) ("Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."); *Purze v. Village of Winthrop Harbor,* 286 F.3d 452, 455 (7th Cir.2002) ("[Class of one plaintiffs] must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects."). Therefore, the Court finds Defendants' Motion should be granted as to Lee's equal protection claim.

    2.  *Retaliation*

    Lee alleges Defendants violated her First Amendment rights when they retaliated against her for objecting to an unlawful moratorium and by sending a Tort Claim Notice to Defendants on August 12, 2016. Dkt. 1. Defendants assert this claim is groundless. Dkt. 27, pp. 9-10.

    "In recognizing one's protected interest in commenting on government officials' actions, we have stated that it is clear that state action designed to retaliate against and chill political expression strikes at the heart of the First Amendment." *CarePartners, LLC v. Lashway,* 545 F.3d 867, 877 (9th Cir. 2008) (internal citations omitted ). Acts of seeking administrative review of government decisions are protected by the right to petition the government. *Id.* "To recover under section 1983 for retaliation in violation of the First Amendment, a plaintiff must establish that: '(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the

constitutionally protected activity and the adverse action.'" *Chinn v. City of Spokane*, 429 F. App'x 673, 674 (9th Cir. 2011) (quoting *Blair v. Bethel Sch. Dist.,* 608 F.3d 540, 543 (9th Cir. 2010)).

"A plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a substantial or motivating factor in the defendant's decision." *CarePartners*, 545 F.3d at 877 (internal citations omitted). "The plaintiffs are required, however, to provide more than mere evidence" that the defendants were aware of their expressive conduct in order to establish a genuine material dispute as to whether retaliation was a substantial or motivating factor. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 929 (2004). A plaintiff must: (1) establish proximity in time between the expressive conduct and the allegedly retaliatory actions; (2) produce evidence that the defendants expressed opposition to the speech, either to her or to others; or (3) demonstrate that the defendants' proffered explanations for their adverse actions were false and pretextual. *Id.*

"[T]he burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct. To meet this burden, a defendant must show by a preponderance of the evidence that it would have reached the same decision; it is insufficient to show merely that it could have reached the same decision." *CarePartners*, 545 F.3d at 877 (internal quotations omitted).

Here, the evidence, viewed in the light most favorable to Lee, fails to show the protected conduct was a substantial or motivating factor in Defendants' alleged conduct in processing Lee's application. The evidence shows Lee's attorney sent a letter to Winborn on August 5, 2016, requesting reconsideration of the vesting date of her application. Dkt. 32, Lee Dec. ¶ 16; Dkt. 32-8. On August 12, 2016, Lee's attorney also sent a Tort Claim Notice to the County

alleging several tort and constitutional claims against the County and Winborn regarding the moratorium and Defendants' refusal to issue a building permit for Lee's home. Dkt. 32, Lee Dec., ¶ 17; Dkt. 32-9. The county commissioners rescinded the moratorium and Winborn determined Lee's application vested prior to the July 26, 2016 adoption of Ordinance 909 (the emergency ordinance). Dkt. 32, Lee Dec. ¶ 18.

On August 23, 2016, eleven days after Lee's attorney sent the Tort Claim Notice, Winborn informed Lee that the DCD would process Lee's permit application that was vested on July 26, 2016. *Id.* at ¶ 19; Dkt. 28-3. Winborn stated Lee's drawings would be sent to a third-party reviewer at the ICC to be reviewed under the IRC. Dkt. 32, Lee Dec., ¶ 19; Dkt. 28-3. While Lee contends Winborn unilaterally decided Lee's application had to be reviewed under the IBC, not the IRC, undisputed evidence contradicts this position. A letter dated September 23, 2016, shows Connell, of the ICC, wrote to Warren, of the DCD, stating the ICC did a preliminary review of the drawings of Lee's project and concluded the IBC, not the IRC, applied. Dkt. 28-4.

Lee does not cite to any evidence showing Defendants delayed and frustrated Lee's application because of Lee's objection to the moratorium and complaints regarding the processing of her application. *See* Dkt. 31. There is no evidence showing Defendants expressed opposition to Lee's protected speech. Moreover, Lee fails to cite evidence showing Defendants took any negative action toward Lee immediately following the alleged exercise of her First Amendment rights. The evidence shows that, after Lee's letters were sent, Defendants took the actions requested by Lee. The moratorium was lifted, Lee's application was deemed vested prior to the moratorium, and the application was sent to a third-party ICC reviewer to be reviewed under the IRC. Lee has not shown any alleged delay or frustration following the ICC reviewer's

determination was proximately linked in time to the protected speech. Lee fails to point to evidence showing Defendants' alleged actions were in retaliation for Lee exercising her First Amendment rights.

In sum, Lee makes no showing that her complaints regarding the moratorium and the Tort Claim Notice were a substantial or motivating factor behind Defendants' alleged adverse actions against Lee. *See Baumgardner v. Town of Ruston*, 712 F.Supp.2d 1180, 1205-06 (W.D. Wash. 2010) (granting motion to summarily dismiss retaliation claim where the plaintiff failed to show his complaints were a substantial or motivating factor behind the defendants' actions). Therefore, Lee has not rebutted Defendants' showing that Defendants did not take adverse action in retaliation for Lee's complaints in violation of her First Amendment rights. Accordingly, the Court finds Defendants' Motion should be granted as to Lee's retaliation claim.

### 3. *Due Process*

Lee alleges Defendants violated Lee's procedural due process rights "by adopting a moratorium on her development that singled her out for discriminatory treatment without giving her notice and opportunity to be heard at the hearing where the moratorium was adopted." Dkt. 1, ¶ 4.4. Lee also alleges Defendants violated her substantive due process rights when Defendants frustrated and delayed Lee's application. *See id*. at ¶ 3.4. Defendants assert (1) Lee does not have a property interest to support a due process claim; (2) there is no liability under § 1983 from preliminary or lower level decisions; (3) Lee was afforded ample procedural due process; and (4) Lee's allegations fail to show a violation of her substantive due process rights.

First, Defendants contend Lee does not have a property interest to support a due process claim. Dkt. 27. Lee contends a nondiscretionary permit application is sufficient to trigger a property right and, thus, Lee's building permit triggers due process. Dkt. 31, pp. 22-23. While

the Court agrees with Lee's general proposition, the evidence, in this case, fails to show Lee

submitted a complete application that complied with the zoning code or other applicable laws.

Therefore, for the following reasons, the Court is not persuaded by Lee's argument.

"To state a substantive or procedural due process claim, the plaintiff must show as a

threshold matter that a state actor deprived them of a constitutionally protected life, liberty, or

property interest." *Baumgardner*, 712 F. Supp. 2d at 1201 (citing *Shanks v. Dressel,* 540 F.3d

1082, 1087 (9th Cir. 2008)). A constitutionally protected property interest in a land use permit

exists where state law gives rise to a "legitimate claim of entitlement" to the permit. *Gerhart v.*

*Lake County, Mont.,* 637 F.3d 1013, 1020 (9th Cir. 2011). The Ninth Circuit has held that issued

permits are the subject of a valid property interest. *See Weinberg v. Whatcom County*, 241 F.3d

746, 753 (9th Cir. 2001). Further, the Ninth Circuit has found a property interest where a

municipality's "regulations provide that once an applicant's building plans comply with the code

and other applicable laws and the fees are paid, the building official *must* issue a building permit

to the applicant." *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988).  Thus, a legitimate

claim of entitlement can exist where state law significantly limits the decision maker's discretion

or where the decision maker's policies and practices create a de facto property interest. *Gerhart,*

637 F.3d at 1021.

Here, the evidence shows Lee submitted an application and paid the fees for a residential

building permit. *See* Dkt. 32, Lee Dec., ¶¶ 5, 11. The County notified Lee her project would be

processed as a commercial project and the County provided Lee with information regarding

additional information Lee needed to submit to the County for the County to process Lee's

SEPA checklist. Dkt. 28-2. Lee's initial application was denied, in part, because it did not meet

the height restrictions for the zoning allowed in the area Lee sought to build her bed and

1  breakfast. *See* Dkt. 28-12. The County also found Lee's amended application was prohibited

2  under the zoning code. Dkt. 32, Lee Dec., ¶ 31. Lee chose to submit revised plans. *Id*. at ¶ 34.

3  Lee's revised plans -- the second amended application -- has been submitted to the Clair

4  Company, a third-party reviewer. The Clair Company determined Lee's plans are incomplete and

5  not suitable for review. Dkt. 28, Johnsen Dec., p. 15; Dkt. 28-7. Lee has not provided the

6  requested documents to allow the Clair Company to begin review of her second amended

7  application. Dkt. 28, Johnsen Dec., pp. 15-17.

8          Viewing the evidence in the light most favorable to Lee, Lee's initial application did not

9  comply with the zoning codes. The application did not meet the height restrictions. This decision

10  was upheld by the superior court. As Lee's initial application did not comply with the zoning

11  codes, there is no evidence the County was required to issue the building permit, which would

12  create a property interest. There is also no evidence Lee's amended application met the

13  requirements of the regulations and zoning codes. Rather, the County informed Lee her amended

14  application still did not qualify for a permit under the zoning codes. Lee decided to revise her

15  application. In fact, Lee's second amended application, submitted to the Clair Company, is still

16  not complete and cannot be reviewed. Thus, Lee has not received a building permit, nor has Lee

17  submitted a complete building plan application that complies with the zoning code and other

18  applicable laws, requiring the County to issue a building permit. Therefore, the evidence fails to

19  show Lee's applications triggered a property interest.

20          As the evidence fails to show Lee's applications for the building permit were sufficient to

21  trigger a property interest, Lee cannot state a substantive or procedural due process claim. *See*

22  *Baumgardner*, 712 F. Supp. 2d at 1201 ("To state a substantive or procedural due process claim,

23  the plaintiff must show as a threshold matter that a state actor deprived them of a constitutionally

24

protected life, liberty, or property interest."). Therefore, Lee's due process claims cannot survive

summary judgment and the Court declines to consider Defendants' remaining due process

arguments. Accordingly, the Court finds Defendants' Motion should be granted as to Lee's

substantive and procedural due process claims.

C.  State Law Claims

Defendant contends there is no evidence to support Lee's state law claims. Dkt. 27. In the

Complaint, Lee alleges claims of (1) negligence against Winborn; (2) negligent

misrepresentation against the County; and (3) tortious interference with business expectancy

against Defendants. Dkt. 1.

1.  *Negligence and Negligent Misrepresentation*

Lee asserts Winborn was negligent. Dkt. 1, pp. 18-19. She also alleges the County made

negligent representations to Lee that her project was a permitted use in the zone in question. *Id*.

at p. 21. Defendants maintain Lee's negligence claims are barred by the public duty doctrine.

Dkt. 27, pp. 15-18.

"The threshold determination in a negligence action is whether a duty of care is owed by

the defendant to the plaintiff." *Taylor v. Stevens Cty.*, 111 Wash. 2d 159, 163 (1988). Under the

public duty doctrine, "a plaintiff must show the duty beached was owed to him or her in

particular, and was not the breach of an obligation owed to the public in general, i.e., a duty

owed to all is a duty owed to none." *Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wash.2d

871, 878 (2012); *see also Fabre v. Town of Ruston*, 180 Wash. App. 150, 160 (2014) (applying

public duty doctrine to negligence and negligent misrepresentation claims).

Lee asserts the "special relationship" exception applies and, as such, her tort claims are

not barred by the public duty doctrine. Dkt. 31, pp. 27-28. "The special relationship exception

applies when "(1) there is direct contact or privity between the public official and the injured

plaintiff which sets the latter apart from the general public, and (2) there are express assurances

given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff.'"

*Woods View II, LLC*, 188 Wash. App. at 28 (quoting *Taylor*, 111 Wash.2d at 166). Defendants

argue only that the evidence fails to show the County gave Lee an express assurance that her

building was compliant with the IRC, Dkt. 27, thus, the Court will only analyze the second

element of the special relationship test.

The second element, as summarized in *Woods View II*,

> requires that a direct inquiry is made by an individual and incorrect information is
> clearly set forth by the government, the government intends that it be relied upon
> and it is relied upon by the individual to his detriment. An assurance is express only
> if it promises that a government official would act in a specific manner.
> Furthermore, any express assurance must be unequivocal.

188 Wash. App. at 28 (internal quotations and citations omitted).

First, Lee relies on, without citing evidence of, general assurances from the DCD staff

that Lee's home and bed and breakfast was an allowed use on the property. Dkt. 31.

The evidence, viewed in the light most favorable to Lee, shows Lee met with the County

prior to purchasing the property in question and confirmed the zoning allowed her to build a

home and bed and breakfast. Dkt. 32, Lee Dec., ¶ 3. On January 13, 2016, the County provided

Lee with a letter stating additional information was needed for Lee's Project Review Request as

the project did not appear to meet the scope of a bed and breakfast and would require approval of

a Zoning Conditional Use Permit. Dkt. 28-1. Lee agrees the January 13, 2016 letter does not

provide assurances that her project would be permitted. Dkt. 28, Johnsen Dec., p. 21.

Lee states she relied on a January 26, 2016 letter from the County that provided a written

review list identifying items needed for a "Residential Building Permit." Dkt. 32, Lee Dec., ¶ 5.

Lee did not include the January 26, 2016 letter in the evidence or provide evidence regarding the content of the letter. On June 29, 2016, the County informed Lee her application would be reviewed as a commercial project. *Id.*; *see* Dkt. 28-2.

There is no evidence the County provided Lee with express assurances and Lee relied on the assurances that the County would approve her specific plans and application for the building permit. Rather, Lee has shown only that the DCD staff told her a bed and breakfast was permitted under the zoning code. There appears to be no disagreement that zoning for the property in question allows for a home and bed and breakfast. However, Lee's proposed home and bed and breakfast did not meet the zoning requirements. The County informed Lee, prior to the purchase of her property, that the scope of the plans submitted did not appear to meet the zoning codes and would require approval of a Zoning Conditional Use Permit. *See* Dkt. 28-1, 28-2. There is no indication the DCD expressly assured Lee she would be approved for a conditional use permit or that her plans would be approved. The evidence fails to show the County provided express assurances to Lee or that she relied on any alleged assurance to her detriment. Thus, there is no evidence of a special relationship between Lee and the County.

Second, Lee contends Winborn assured Lee that the DCD would process her permit application as vested on July 26, 2016 and the DCD would have the plans reviewed under the IRC. Dkt. 31, p. 28. The evidence shows that, on August 23, 2016, Winborn informed Lee the DCD would process Lee's permit application with a vesting date of July 26, 2016. Dkt. 32, Lee Dec., ¶ 19; Dkt. 28-3. Winborn stated that "it would be in everyone's best interest for [the County] to send [Lee's] drawings to the . . . ICC[ ] to have a third party review performed." Dkt. 28-3. Winborn stated the County would "submit [the drawings] as a residential building permit and have [the drawings] reviewed from the [IRC]." *Id*. The evidence shows the County sent

Lee's application to the ICC to be reviewed by a third-party reviewer under the IRC. *See* Dkt. 28-4.

The undisputed evidence shows Winborn treated Lee's application as vested as of July 26, 2016, which would indicate only that Lee's application would need to meet the permitting requirements in place on that date. There is no evidence or allegations that Winborn attempted to impose different requirements on Lee's application than those that were in place on July 26, 2016. Moreover, Winborn told Lee that the County would send her drawings to the ICC to have a third-party review performed. The evidence shows this occurred. *See* Dkt. 28-4. The drawings were sent to an ICC reviewer who determined the Lee's design should be reviewed under the IBC. There were no assurances Lee's application would be approved under the IRC or that Lee would be issued the building permit. Her application was reviewed under the IRC and the third party reviewer determined the application drawings did not meet IRC requirements and would need to be processed under the IBC. There is also no evidence, nor allegations, showing Lee detrimentally relied on Winborn's alleged assurances. *See* Dkt. 31, p. 28. The evidence fails to show Winborn provided incorrect information to Lee or promised to act in a certain way, but failed to. Therefore, Lee has not shown a special relationship between herself and Winborn.

In sum, Defendants have submitted evidence showing there was no special relationship between Lee and Defendants. Specifically, the evidence fails to show Defendants provided Lee with incorrect information or made promises to act in a specific manner and did not. Lee has provided only vague, conclusory allegations to overcome this evidence. The Court finds this is insufficient to rebut Defendants' summary judgment showing. As there is no evidence a special relationship existed between Lee and Defendants, the public duty doctrine precludes Lee's claims of negligence and negligent misrepresentation. Accordingly, the Court finds Defendants'

1  Motion should be granted as to Lee's state law claims of negligence and negligent

2  misrepresentation.

3      2.  Tortious Interference with Business Expectancy

4      Lee contends Defendants knew of and intentionally interfered with her business

5  expectancy. Dkt. 1, p. 20. To establish a claim of tortious interference, a plaintiff must show (1)

6  the existence of a valid business expectancy; (2) the defendant had knowledge of that

7  expectancy; (3) an intentional interference inducing or causing termination of the expectancy; (4)

8  that the defendant interfered for an improper purpose or used improper means; and (5) resultant

9  damages. *Greensun Grp., LLC v. City of Bellevue*, 7 Wash.App.2d 754, 768 (2019). If a plaintiff

10 establishes all five elements, the defendant may demonstrate a privilege protecting its actions.

11 *Pleas v. City of Seattle,* 112 Wash.2d 794, 805 (1989) (citing *Commodore v. Univ. Mech.*

12 *Contractors, Inc.,* 120 Wash.2d 120, 136 (1992)).

13      i.  Valid Business Expectancy

14      First, Lee must show the existence of a valid business expectancy. "A valid business

15 expectancy includes any prospective contractual or business relationship that would be of

16 pecuniary value." *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.,* 114

17 Wash.App. 151, 158 (2002). Here, evidence, as previously discussed, shows Lee purchased

18 property and developed plans to build a home to include a bed and breakfast in Clallam County.

19 She also applied for the building permit with the County. While there is evidence Defendants

20 informed Lee as early as January 2016 that her plans did not appear to comply with the zoning

21 codes for the property in question, *see* Dkt. 28-1, the Court finds Lee has presented evidence

22 showing she had a valid business expectancy in building, opening, and operating a bed and

23 breakfast in Clallam County.

24

ii. Defendants' Knowledge

Second, to state a claim of tortious interference, Lee must show Defendants had knowledge of her business expectancy. Lee has submitted evidence showing she met with Winborn and the County staff in January of 2016 and she informed Defendants of her intention to build a bed and breakfast. There is also evidence showing Defendants reviewed Lee's permit applications and took actions to stop the project, indicating Defendants were aware of Lee's business expectancy. As such, Lee has provided sufficient evidence to show a genuine issue of material fact exists regarding whether Defendants had knowledge of her business expectancy.

iii. Intentional Interference Causing Termination of the Expectancy

Third, Lee must show Defendants intentionally interfered causing termination of the business expectancy. "A party intentionally interferes with a business expectancy if it desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." *Greensun Group LLC*, 7 Wash.App.2d at 771 (internal quotations omitted).

Lee has submitted sufficient evidence to show Defendants intentionally interfered with Lee's business expectancy. The evidence, viewed in the light most favorable to Lee, shows that, in January of 2016, Winborn told Lee to reduce the size of the bed and breakfast or Winborn would do all she could to delay or prevent the building permit. Dkt. 32, Lee Dec., ¶ 4. Winborn then sought an emergency ordinance through the county commissioners at their July 19, 2019 meeting. Dkt. 32, Lee Dec., ¶¶ 6-7. Lee was not told about the public meeting, but her attorney heard of the meeting and Lee asked him to attend, which he did. *See id*. at ¶¶ 7, 10. The moratorium did not pass at the July 19, 2019 meeting. *See* Dkt. 32-2.

After the emergency moratorium did not pass, Lee attempted to pay the application fee. Dkt. 32, Lee Dec. ¶ 11. The evidence shows the County denied her check because it was made

out to wrong department, but the County had accepted similar checks. *Id*. Lee then submitted a check to the correct department and her application submission was complete. *Id*.

Winborn sought another emergency moratorium through the county commissioners at their July 26, 2019 meeting. . *See id*. at ¶ 13; Dkt. 32-5. There is evidence showing Winborn posted comments on a social media website asking citizens to attend the meeting to oppose Lee's project. *Id*. at ¶ 14; Dkt. 32-6. After a public hearing, the emergency moratorium was passed by the county commissioners. Dkt. 32, Lee Dec., ¶ 15; Dkt. 32-7. Lee's application was placed on hold for a few weeks until the moratorium was lifted. *See* Dkt. 32, Lee Dec., ¶ 15.

The Court finds this evidence is sufficient to show intentional interference. Defendants told Lee they would attempt to stop her project and took steps to stop the project, such as requesting an emergency moratorium to stop the development of Lee's bed and breakfast.

Lee, however, has not submitted evidence rebutting Defendants' showing that Defendants' actions did not cause Lee's business expectancy to end. Rather, the evidence, viewed in the light most favorable to Lee, shows Lee's application was deemed vested within weeks of Defendants' interference. *See* Dkt. 32, Lee Dec., ¶ 19. Her application was then denied because her drawings did not comply with zoning codes. *See* Dkt. 28-11; Dkt. 28-12. Defendants found Lee's amended application still did not comply with zoning codes and Lee chose to revise her application. *See* Dkt. 32, Lee Dec., ¶¶ 30-34. Finally, Lee's application--the second amended application--was sent to a third-party reviewer, the Clair Company. *See id*. at ¶¶ 37-38. The Clair Company determined Lee's plans, provided on November 22, 2018, were incomplete and not suitable for review. Dkt. 28, Johnsen Dec., p. 15; Dkt. 28-7. There is no evidence Lee has made any attempts to complete the application. *See id*. at pp. 16-17. At this time, Lee's second

1  amended application is still pending. This evidence shows Lee's business expectancy in building

2  a bed and breakfast has not terminated.

3        Lee cites to *City of Seattle v. Blume*, 134 Wash.2d 243 (1997), to support her position that

4  she needs to show only that the interference caused delay, not a termination of a relationship. In

5  *Blume*, the court found a party could still pursue damages even after withdrawing a permit when

6  a city has delayed a process to the point that it is no longer feasible for the applicant to continue.

7  134 Wash.2d at 259. Here, unlike *Blume*, Lee's application is being reviewed by an independent

8  third-party. There is no indication Defendants delayed the application process to the point that it

9  was no longer feasible for Lee to continue. Rather, Lee and the County continued to move

10 forward on her applications and, at this time, her current application has not been reviewed due

11 to Lee's conduct and not as a result of Defendants' actions. Thus, the Court is not persuaded by

12 Lee's argument.

13        For these reasons, the Court finds the evidence shows Defendants' intentional

14 interference did not cause a termination to Lee's business expectancy. Lee has not provided

15 sufficient evidence to overcome Defendants' summary judgment showing. Therefore, the Court

16 finds there is no genuine issue of material fact regarding whether Defendants' interference

17 caused the termination of a business expectancy.

18              iv.  Improper Means or Purpose

19        Fourth, to succeed on a tortious interference claim, Lee must show Defendants interfered

20 for an improper purpose or used improper means. A claim for tortious interference can be

21 established by demonstrating the defendant acted with improper motive, improper means, or

22 both. *Pleas*, 112 Wash.2d at 804-05. Washington State courts have stated,

23              in government delay cases, proving improper purpose requires showing that the
                defendant delayed plaintiff with the purpose of improperly preventing plaintiff's

24

land development, and proving improper means requires showing that the defendant arbitrarily singled out for delay a particular plaintiff or type of plaintiff.

*Libera v. City of Port Angeles*, 178 Wash.App. 669, 677 (2013) (citing *Pleas*, 112 Wash.2d at 804–06; *Westmark Development Corp. v. City of Burien*, 140 Wash.App. 540, 560–61 (2007)).

Lee asserts Defendants improperly singled out her project for political purposes. *See* Dkt. 31. When a municipality singles out a project, it is an improper purpose to do so for the purpose of political advantage, such as placating a state representative or a community group. *Westmark,* 140 Wash.App. at 560; *Pleas,* 112 Wash.2d at 796. Here, there is evidence Winborn sought community support for her opposition to Lee's project and there is evidence citizens did not support Lee's project. *See* Dkt. 32-3; Dkt. 32-5; Dkt. 32-6. There is no evidence showing Winborn interfered with Lee's project to placate a community group. Instead, Winborn sought support from a community group after establishing her opposition to the project.

Improper means could also be shown if Defendants singled out Lee's project "by imposing additional. (sic) requirements not contained in the applicable statute." *Woods View II, LLC*, 188 Wash.App. at 36. There is evidence Defendants singled out Lee's project because the County had never contemplated a building permit request in the zoned area of that size. *See* Dkt. 32-3. However, there is no evidence Defendants imposed additional requirements on Lee's project that were not contained in the zoning codes or applicable statutes. There is also no evidence Defendants singled out Lee's project compared to other similarly situated projects because there were no other similarly situated projects. Rather, the County adopted an ordinance that limited all buildings in rural, residential areas to 10,000 square feet for two months. Dkt. 32-7, p. 4. Regardless of the moratorium, Lee's plans did not meet the zoning requirements and, as such, her requests for a building permit were denied. Thus, Lee has failed to show the County arbitrarily singled out, for delay, Lee's proposed development in the permitting process as

compared to other similarly situated projects. *See Woods View II, LLC*, 188 Wash.App. at 36 (failed to show singled out compared to similarly situated projects).

Next, Lee asserts Defendants improperly delayed Lee's project by failing to review her amended application while the appeal was pending on her initial application. *See* Dkt. 1, 31. "In the permitting context, one example of an improper means is imposing an extraordinary delay." *Woods View II, LLC*, 188 Wash.App. at 33. Viewing the evidence in the light most favorable to Lee, Winborn's actions caused Lee's project to be placed on hold for a few weeks while a moratorium was in place. *See* Lee Dec., ¶ 15. Winborn also refused to review Lee's amended application while Lee's appeal of her initial application was pending. *Id*. at ¶¶ 26-28. There is no evidence showing the typical amount of time it takes the County to review building permits or that the County does not typically decline to review revised applications while an appeal is pending. The evidence fails to show the County's decision to wait until Lee's appeal was completed was an improper means resulting in an extraordinary delay. *Compare Woods View II, LLC*, 188 Wash.App. at 33-34 (finding 19 month delay when process should take 78 days was not improper because the county suspended the application while waiting for guidance from the State) *with Westmark*, 140 Wash.App. at 559-60 (finding more than three year delay was improper when typical response was 30-120 days, the city would not provide straight answers after developer immediately provided requested information, and the city made decisions delaying the project without reviewing the project).

Finally, Lee asserts, generally, that Winborn's conduct shows improper purpose. *See* Dkt. 1. To stop Lee's project, evidence shows Winborn made one threatening comment before Lee purchased her property. Dkt. 32, Lee Dec., ¶ 4. Winborn also requested the county commissioners issue an emergency ordinance to place a moratorium on all rural-residential

projects over 10,000 square feet, which included Lee's project, for sixty days. *See* Dkt. 32-3;

Dkt. 32-5. The county commissioners adopted the requested ordinance. *See* Dkt. 32-7, p. 4.

Winborn also refused to review Lee's application while an appeal was pending. *See* Dkt. 32, Lee

Dec., ¶¶ 26-28. "While improper purpose is not synonymous with 'illegal' purpose, it follows

logically that a County's pursuit of legally available avenues to address its concerns would

necessarily not constitute 'improper purposes.'" *Woods View II, LLC*, 188 Wash. App. at 37.

While the emergency moratorium was vacated, there is no evidence Winborn or the County used

illegal means to attempt to stop Lee's project. Instead, the evidence shows Defendants pursued

legal avenues available to her in an attempt to stop Lee's project. As such, Lee has failed to rebut

Defendants' showing that Winborn's and the County's conduct, in general, was not improper.

For the above stated reasons, the Court finds Lee has failed to rebut Defendants' showing

that their interference was not through improper means or purpose. Therefore, Lee has failed to

overcome Defendants' showing that no genuine issue of material fact exists regarding whether

Defendants interfered through improper means or with an improper purpose.

v.   Damages

Fifth, Lee must show Defendants' interference resulted in damages. A party must prove a

claim of damages with reasonable certainty. *Mut . of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*,

178 Wash. App. 702, 315 P.3d 1143 (2013). "Evidence of damage is sufficient if it affords a

reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or

conjecture." *Id.* at 716. The Court has determined Lee has not shown Defendants' conduct

caused the termination of a business expectancy or that Defendants' conduct was improper.

Therefore, Lee's tortious interference claim cannot survive summary judgment and the Court

need not determine if Lee has shown a genuine issue of material fact exists regarding damages.

1    iv.  Conclusion

2    In summation, Defendants have submitted evidence showing their conduct did not cause

3    the termination of Lee's business expectancy and that they did not act through improper means

4    or with improper purposes. Lee has not sufficiently rebutted Defendants' showing and has, thus,

5    not shown a genuine issue of material fact remains regarding Lee's tortious interference with

6    business expectancy claim. *Compare Sound Mind & Body, Inc., v. City of Seattle*, 122 Wash.

7    App. 1074 (2004) (finding trial court properly dismissed tortious interference claim where there

8    was no evidence that the defendant affected the plaintiff's business relationships, either current

9    or prospective, or caused it any other injury or damage) *and Sea-Pac Co., Inc. v. United Food &*

10   *Commercial Workers Local Union 44*, 103 Wash.2d 800, 805 (1985) (granting summary

11   judgment where there was "no sufficiently close, actual, causal connection" between the

12   defendant's actions and the alleged loss) *with Greensun Group, LLC*, 7 Wash.App.2d at 776

13   (finding sufficient evidence that the plaintiff suffered damages when the city did not issue a

14   license and the evidence showed the plaintiff would have been able to open the store within a

15   week of receiving its license and the plaintiff provided evidence of profits from a similar store).

16   Accordingly, the Court finds Defendants' Motion should be granted as to Lee's claim of tortious

17   interference with a business expectancy.[7]

18   **VI.    CONCLUSION**

19   The Court concludes the evidence, viewed in the light most favorable to Lee, shows no

20   genuine issues of material fact exist in this case as to Lee's claims that Defendants violated her

21   First and Fourteenth Amendment rights. There are also no genuine issues of material fact

22

23   _____

24   [7] As the Court finds Defendant is entitled to summary judgment on all Plaintiff's substantive claims, the
     Court declines to consider Defendants' remaining arguments. *See* Dkt. 27, pp. 2-23.

remaining as to Lee's state law claims of negligence, negligent misrepresentation, and tortious

interference with business expectancy. Further, Lee has voluntarily withdrawn her state law

claims for defamation, defamation per se, and outrage and intentional infliction of emotional

distress. Therefore, Lee has failed to overcome Defendants' summary judgment showing.

Accordingly, Defendants' Motion for Summary Judgment (Dkt. 27) is granted and this case is

closed.

Dated this 17th day of March, 2020.

David W. Christel
United States Magistrate Judge